**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X

DAIJA RANDALL,                                              :

                                                           :     Case No.: 1:26-cv-00641

                          Plaintiff,                       :

                                                           :     **COMPLAINT**

              v.                                           :

                                                           :     **Jury Trial Demanded**

RESTAURANT ASSOCIATES, COMPASS GROUP         :
USA, LLC, and TATIANA BY KWAME ONWUACHI,

                                                           :

                          Defendants.                      :

------------------------------------------------------------------X

Plaintiff Daija Randall, by her attorneys, Filippatos PLLC, hereby alleges the following

against Defendants Restaurant Associates ("RA"), Compass Group USA ("Compass"), and

Tatiana by Kwame Onwuachi ("Tatiana") (collectively "Defendants") as follows:

**NATURE OF THE CASE**

1.    This case is about Tatiana, an elite New York City Restaurant, where sexual

harassment is tolerated, and employees who report are subject to retaliation.

2.    Plaintiff was hired by Tatiana in January 2023 as a pastry prep cook and quickly

proved herself, earning praise and having her dessert selected for the elite restaurant's menu.

3.    Soon after she began, however, she was subjected to escalating sexual harassment

and vulgar, gender-based remarks by management and kitchen staff. When Plaintiff reported the

misconduct, Defendants failed to take meaningful corrective action, treated her with hostility, and

then terminated her weeks later under the pretext of "position elimination."

1

4.      Accordingly, Plaintiff brings this action against Defendants for discrimination and retaliation based on her gender in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (as amended in 1972, 1978, and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); the New York State Human Rights Law, New York State Executive Law, §§ 296 *et seq*. (the "NYSHRL"); and the New York City Human Rights Law, Administrative Code §§ 8-107, *et seq*. (the "NYCHRL").

## JURISDICTION AND VENUE

5.      Jurisdiction of this Court is proper under 28 U.S.C. § 1331 as Plainitff alleges claims pursuant to Title VII.

6.      This Court has supplemental jurisdiction over the claims Plaintiff has brough under state and city law pursuant to 28 U.S.C. § 1367.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more of the Defendants are headquartered within the Southern District of New York and/or the acts complained of occurred and/or originated herein.

## ADMINISTRATIVE PREREQUISITES

8.      On or about July 19, 2024, Plaintiff filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") regarding Defendants' discriminatory and retaliatory actions.

9.      On January 16, 2026, Plaintiff was issued a Notice of Right to Sue, and she timely commenced this action.

## PARTIES

10.     At all relevant times hereto, Plaintiff Daija Randall ("Plaintiff" or "Ms. Randall") has been a resident of the State of New York and the County of Kings.

11. At all times relevant hereto, RA was and is a for-profit company maintaining its principal place of business at 132 W. 31 Street, Suite 601, New York, NY 10001.

12. At all times relevant hereto, Compass Group was and is a for-profit company maintaining its principal place of business at 2400 Yorkmont Road, Charlotte, North Carolina, 28217.

13. At all times relevant hereto, Tatiana was and is a for-profit company maintaining its principal place of business at 10 Lincoln Center Plaza, New York, New York 10023.

14. Upon information and belief, Defendant RA employs approximately 6,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

15. Upon information and belief, Defendant Compass employs approximately 600,000 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

16. Upon information and belief, Defendant Tatiana employs approximately 150 individuals on a full-time or full-time equivalent basis and thus is subject to all statutes upon which Plaintiff is proceeding herein.

17. At all times relevant hereto, Plaintiff was an employee of Defendants.

## FACTUAL ALLEGATIONS

18. On January 17, 2023, Plaintiff was hired by Tatiana as a Prep Cook. Plaintiff assumed responsibility for pastry and bread preparation, the weekly prep list, and pastry inventory.

19. Plaintiff excelled in this role, earning praise from her supervisor, Kamat Nelson ("Ms. Nelson"). For example, on February 13, 2023, Ms. Randall earned a promotion to kitchen supervisor, as such, her hourly rate was increased as well as her job responsibilities.

20.    Thus, given her demonstrated ability to use her vast knowledge of the culinary industry to generate successful outcomes for Defendant Tatiana, Plaintiff achieved early success at Defendant Tatiana, and was thrilled to have reached what she thought was the pinnacle of her career by landing a position at an elite restaurant, like Tatiana.

21.    Shortly after commencing work at the Company, however, Plaintiff realized that Defendants tolerated sexual harassment and vulgar remarks towards certain protected groups. In or around January 2023, Mouhamadou Diop ("Mr. Diop"), Complex Director, began harassing Plaintiff on a weekly basis. Mr. Diop would often remark on Plaintiff's appearance, and tell Plaintiff that she was beautiful. These unsolicited comments made Plaintiff uncomfortable and experience anxiety while at work. Over time, Mr. Diop 's comments worsened, Mr. Diop began asking Ms. Randall if he could be her "sugar daddy" and if he could "pay her bills." These comments mortified Plaintiff and caused her anxiety to worsen.

22.    Nevertheless, Plaintiff continued to perform her job in an exemplary manner and hoped she would not be subject to any further discriminatory conduct. Unfortunately, that hope was dashed when, on March 12, 2023, Mr. Diop sexually harassed Plaintiff.

23.    On March 12, 2023, Kwame Onwuachi ("Mr. Onwuachi"), Executive Chef, visited Tatiana to celebrate Tatiana being named New York's number one restaurant by Pete Wells of the New York Times. That day, Mr. Onwuachi arrived at the restaurant and asked Denisha Anderson, Sous Chef, Stephan Marshan, Junior Sous Chef, Ms. Newman, Mr. Diop, and Plaintiff to go upstairs to the dining room with him. Once upstairs, Mr. Onwuachi went behind the bar and poured everyone a shot of alcohol in celebration. Plaintiff felt instantly uncomfortable as she preferred not to drink. As executive chef of Tatiana, Mr. Onwuachi controlled the fate of Plaintiff's career and

4

Plaintiff did not want to stand out in front of Mr. Onwuachi. Feeling immense pressure, Plaintiff took the shot alongside her colleagues.

24.     Shortly after, Plaintiff went to the Lincoln Center lobby to clock out for the day. Once she got to the lobby, Mr. Diop cornered Plaintiff against a wall. Mr. Diop asked Plaintiff if she wanted to take another shot with him. Plaintiff felt incredibly intimidated and scared by Mr. Diop 's demeanor. Hopeful that if she complied, he would leave her alone, Plaintiff took the shot with him. After chatting for a moment, Mr. Diop unbuttoned his shirt and forcefully grabbed Plaintiff's hand, placed it on his chest and began flexing his muscles. Plaintiff had no way to escape and began panicking. After what felt like a lifetime, Mr. Diop laughed and buttoned his shirt. Plaintiff quickly ran out of the room.

25.     After this incident, Plaintiff told her friend and co-worker, Dereck, what happened. On the train ride home, Dereck told Plaintiff that he was sorry about what happened to her, but not surprised given Mr. Diop's previous behavior.

26.     Despite the assault, Plaintiff continued to be a top performer at Tatiana. In fact, in or around April 2023, Mr. Onwuachi came to Tatiana and asked the entire kitchen staff to do a "tasting" for him. Following the tasting, Mr. Onwuachi picked Plaintiff's strawberry shortcake dessert to be placed on the menu. Indeed, Plaintiff's dish was one of only two dishes Mr. Onwuachi picked to be placed on the prestigious menu.

27.     Despite Plaintiff's success, she continued to face harassment at Tatiana.

28.     In or around August 2023, Plaintiff was cleaning the kitchen with Chef Parker, Sous Chef, Pablo, Prep Cook, and Marquis Sespedes, Prep Cook. As Plaintiff was putting away gloves into a box, Chef Parker came up to her and said, "you're a woman, I know you can stuff those in there good." This comment was clearly intended as a sexual innuendo directed at the only woman

in the kitchen. Plaintiff was mortified. She quickly finished cleaning her station and walked out of the kitchen and began crying. This time, Plaintiff had had enough and went directly to Ms. Newman to report Chef Parker. Plaintiff cried as she told Ms. Newman about Chef Parker's conduct. Ms. Newman told Plaintiff that she would investigate her claims and collect witness statements.

29.     Even though Plaintiff reported Chef Parker's conduct to Ms. Newman, in the week that followed Plaintiff was still required to work with Chef Parker. These interactions caused Plaintiff immense stress and anxiety.

30.     About one week after Plaintiff reported Chef Parker's conduct, Ms. Newman told Plaintiff that she concluded her investigation and determined that Chef Parker would have to undergo sexual harassment training. Although slightly relieved, Plaintiff did not feel like this was an adequate measure. Indeed, Plaintiff would still be required to work with Chef Parker.

31.     Only two weeks later, Chef Parker and another employee got into an argument that almost turned physical. Following the altercation, Chef Parker was reprimanded by being transferred to another location. This was a slap in the face to Plaintiff. It was clear that Tatiana acted negligently by not taking Plaintiff's concerns seriously and allowing Chef Parker to harass and intimidate another employee only two weeks later.

32.     In the weeks that followed Plaintiff's complaint, Ms. Newman began treating Plaintiff with hostility. Ms. Newman began ignoring Plaintiff and only spoke to her when necessary. Plaintiff found this odd, given that the two of them used to be friendly with one another. Indeed, even when Plaintiff spoke with Ms. Newman regarding work matters, Ms. Newman would roll her eyes at Plaintiff and waive her hands at her in a dismissive way.

33.    On September 22, 2023, after enduring Ms. Newman's hostile behavior for a month and having nobody to confide in, Plaintiff made complaints about Ms. Newman seemingly retaliating against her.

34.    Nonetheless, Plaintiff continued to excel at Tatiana. In fact, on or around September 20, 2023, Plaintiff had a discussion with Ms. Newman and Mr. Onwuachi about keeping her strawberry shortcake on the menu long-term, as well as adding two additional desserts of her own to the menu- another exceptional feat. With successes such as these, Plaintiff was hopeful that her experience at Tatiana would improve.

35.    On Saturday, September 23, 2023, Ms. Newman texted Plaintiff telling her that the Restaurant had a "buyout" on Tuesday, September 26, 2023, and that Plaintiff would need to work. However, Plaintiff had already taken September 25, 2023, and September 26, 2023, off, which Ms. Newman had approved. Nevertheless, Plaintiff agreed to work- hopeful that it would impress Ms. Newman and ease her animosity towards Plaintiff. Indeed, this is yet another example of Ms. Newman retaliating against Plaintiff.

36.    On September 26, 2023, Plaintiff was getting ready to assemble goat patties, a frequent task for the pastry team, when Ms. Newman asked to speak with Plaintiff. Standing behind Ms. Newman was Craig Joseph ("Mr. Joseph"), General Manager. Ms. Newman and Mr. Joseph led Plaintiff to the kitchen office and told Plaintiff that she was being terminated. Plaintiff was in complete shock. She asked Ms. Newman why she was being terminated, and Ms. Newman told her it was because they were eliminating Plaintiff's position. Plaintiff felt completely blindsided. Indeed, only six days earlier Mr. Onwuachi and Ms. Newman had asked Plaintiff to develop two new desserts for the menu. To add insult to injury, Plaintiff was told that Ms. Newman brought in someone else to run the pastry department, clearly indicating that Plaintiff's role was necessary.

37.     The temporal proximity of only *one month* between Plaintiff's complaint of harassment and her termination created a strong inference of retaliation.

38.     Later that day, Plaintiff sent an email to the Defendants' Human Resources ("HR") department explaining that she had been unlawfully terminated from Tatiana, as well as detailing some of the problems she had faced with Ms. Newman. That same day, Plaintiff was told that Defendants were investigating her complaints, however, in the meantime Plaintiff was left unemployed. In the days that followed, Plaintiff was unable to get out of bed due to immense anxiety. In fact, Plaintiff's anxiety and depression became so severe that she began taking anxiety medication and seeing a therapist.

39.     On November 4, 2023, Plaintiff received a response from Defendants stating that they completed its investigation and that the "Company has taken appropriate action." The representative told Plaintiff that Mr. Diop would be reaching out to her with a new available position.

40.     One month later, Plaintiff was assigned to a position at CxRA, the catering division of Defendants. Not only was this position vastly different from the work Plaintiff was doing at Tatiana, but she had to commute to Woodside, Queens-a significantly longer commute. Adding insult to injury, after only one week working at CxRA, Plaintiff was not placed on the schedule for four weeks. Clearly, this was just an attempt by Defendants to cover up their retaliation and discrimination against Plaintiff.

41.     As a direct result of the actions and inactions of Defendants, Plaintiff has suffered injuries and damages and continues to suffer such injuries, the full extent of which is not yet known, including emotional distress, mental anguish, and injury to her employment opportunities. She has also suffered deprivation of civil liberties, and loss of professional opportunities.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of Title VII)

42. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

43. Plaintiff is a woman and therefore a member of a protected class, who was qualified for her position, yet she suffered numerous adverse actions, including but not limited to, subjecting her to a hostile work environment.

44. By the acts and practices described above, Defendants have discrimination against Plaintiff because of her gender in violation of Title VII.

45. Defendants knew or should have known that their actions constituted unlawful discrimination on the basis of gender and/or showed reckless disregard for Plaintiff's statutorily protected rights.

46. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including lost wages, lost career opportunities, reputational harm, and emotional distress and other injuries.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of Title VII)

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

48. Plaintiff engaged in protected activity under Title VII when she complained internally about discrimination on the basis of gender.

49. Defendants retaliated against Plaintiff by blackballing her from job opportunities, offering her an entirely different position at the former's catering division and contriving a layoff in order to punish her.

50. Defendants' actions constitute unlawful retaliation under Title VII.

51.     As a direct and proximate result, Plaintiff has suffered damages, including lost compensation, reputational harm, emotional distress, and other injuries.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL)

52.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs in this Complaint as if fully set forth herein.

53.     New York Executive Law § 296 provides that:

It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

54.     By the actions detailed above, among others, Defendants have discriminated against Plaintiff because of her gender in violation of the NYSHRL by denying Plaintiff equal terms and conditions of employment, including by isolating her, failing to address her complaints of gender-based harassment, and systematically denying the benefits and stability of her position that were afforded to similarly situated male colleagues.

55.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages, including lost wages, lost opportunities for advancement, emotional distress, and other injuries.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)

56.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

57.     New York Executive Law § 296 provides that:

10

It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

58.    Plaintiff engaged in protected activity under the NYSHRL when she opposed discriminatory treatment based on gender and complained to Defendants' Human Resources department.

59.    Defendants retaliated against Plaintiff by terminating her position under the pretext of a role elimination and offering her an unsuitable role within their catering division.

60.    As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including economic losses, reputational harm, and emotional distress.

## FIFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL)

61.    Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth herein.

62.    New York City Administrative Code §8-107(1) provides that it shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation, or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions, or privileges of employment."

63.    By the actions detailed above, among others, Defendants have discriminated against Plaintiff because of her gender in violation of the NYCHRL by denying Plaintiff equal terms and conditions of employment, including by isolating her, failing to address her complaints

11

of gender-based harassment, and systematically denying her the benefits and stability of her role that was afforded to similarly situated male colleagues.

64.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages, including lost wages, lost opportunities for advancement, emotional distress, and other injuries.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL)

65.    Plaintiff hereby repeats and realleges each and every allegation made in the above paragraphs of this complaint as if fully set forth herein.

66.    New York City Administrative Code §8-107(7) provides that "it shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter, (iv) assisted the commission or the corporation counsel in an investigation commenced pursuant to this title, (v) requested a reasonable accommodation under this chapter, or (vi) provided any information to the commission pursuant to the terms of a conciliation agreement made pursuant to section 8-115 of this chapter."

67.    Plaintiff engaged in protected activity under the NYCHRL when she opposed discriminatory treatment based on gender and complained to Defendants' Human Rights department.

68.    Defendants retaliated against Plaintiff by blackballing her from job opportunities, offering her an entirely different position at the former's catering division and contriving a role

elimination in order to punish her.

69. As a direct and proximate result, Plaintiff has suffered and continues to suffer damages, including economic losses, reputational harm, and emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States, State of New York, and City of New York;

B. An injunction and order permanently restraining Defendants and its officers, officials, agents, successors, employees and/or representatives, and any and all persons acting in concert with them, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

D. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

F.       An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

G.       Prejudgment interest on all amounts due;

H.       An award of costs that Plaintiff has incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiff's reasonable attorneys' fees and costs to the fullest extent permitted by law; and,

I.       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: January 27, 2026
        New York, New York

                                        Respectfully submitted,

                                        **FILIPPATOS PLLC**


                                        By: _____
                                        Ananda Chaudhuri
                                        Gabrielle Rosen Harvey
                                        425 Madison Avenue, Suite 1502
                                        New York, NY 10017
                                        Telephone: (914) 984-1111
                                        AChaudhuri@filippatoslaw.com
                                        Grosenharvey@filippatoslaw.com
                                        *Counsel for Plaintiff*